# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>   v.<br><br>IGNACIO MONTANEZ-RODRIGUEZ,<br><br>                        Defendant. | Case No. 18-cr-01699-BAS-1<br><br>**ORDER DENYING MOTIONS FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A)**<br>**(ECF Nos. 36, 44)** |

On July 24, 2018, the Court sentenced Mr. Montanez-Rodriguez to 120 months in custody, the minimum mandatory sentence in the case, of which he has served approximately 32 months. (ECF No. 36.) Mr. Montanez-Rodriguez now moves to reduce his sentence to time served for two reasons. First, he argues that his medical conditions place him at severe risk if he were to contract COVID-19. (ECF No. 36 ("Defendant's Motion").) Second, he argues that his medical conditions are being inadequately addressed while he is in custody. (*Id.*) The Government opposes. (ECF No. 38 ("Government's Response").) After appointment of counsel, counsel for Mr. Montanez-Rodriguez filed a Supplemental Motion. (ECF No. 44 ("Defendant's Supplemental Motion").) For the reasons stated below, the Court **DENIES** Mr. Montanez-Rodriguez's requests.

## I. BACKGROUND

On February 27, 2018, Mr. Montanez-Rodriguez drove through the Port of Entry from Mexico to the United States in a car with a non-factory compartment containing 13.8 kilograms of methamphetamine. (ECF No. 27 ("PSR") ¶¶ 4–13.) At the time, he also had $1836 in cash. (*Id.*) Post-arrest, Mr. Montanez-Rodriguez said he thought smuggling drugs would be easy money. (*Id.*) He admitted he had successfully smuggled drugs twice before his arrest. (*Id.*)

In fact, this is the second time Mr. Montanez-Rodriguez has been convicted of smuggling drugs across the border. In 2011, he was convicted of importing cocaine for which he received a 30-month sentence. (PSR ¶¶ 33–36.) He also has two prior misdemeanor convictions for possession of methamphetamine. (*Id.*)

During his last incarceration, Mr. Montanez-Rodriguez received eight months of treatment after he tested positive for TB. (PSR ¶ 54.) He also suffers from diabetes and takes medication for his high blood pressure. (PSR ¶¶ 54, 55.) His Type-II diabetes has led to a series of medical complications. One of his toes has been amputated, and he suffers from diabetic macular edema, which has decreased his vision. (Defendant's Motion, Exhs. E, F, G.) Although his blood pressure appears to be well-controlled by medication,[1] doctors report that his hypertension and hyperlipidemia are highly indicative of coronary artery disease. He exhibits moderate to severe stenosis and is waiting to see a vascular surgeon. (Government's Response, Exh. D.)

Mr. Montanez-Rodriguez, who is housed at Florence FCI, sent a request for compassionate release to the Warden at Florence on August 12, 2020. (Defendant's Motion, Exh. A.) Defendant has received no response to his request. (Defendant's Affidavit, ¶¶ 3–5.)

---

[1] Defendant's most recent blood pressure readings are 119/69 on October 16, 2020; 120/58 on August 31, 2020; 102/56 on August 6, 2020; and 108/55 on July 31, 2020. (Government's Response, Exh. C.)

## II. ANALYSIS

### A. Exhaustion of Administrative Remedies

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 825–26 (2010). A narrow exception, compassionate release, allows a court to reduce a sentence for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i).

However, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* In other words, Mr. Montanez-Rodriguez must fully exhaust his administrative remedies from the Warden of the facility where he is being housed before he turns to the Court for relief.

Section 3582 provides two alternative routes to exhaustion. In the first, a petitioner files a petition, which is acted on by the Warden, and the petitioner proceeds to fully exhaust his or her administrative remedies by appealing this refusal from the Warden. In the second, the Warden takes no action, 30 days lapse and, because of the Warden's failure to act, the petitioner may proceed without fully exhausting his or her administrative remedies.

Mr. Montanez-Rodriguez provides evidence that he submitted a request for compassionate release from the Warden on August 12, 2020. (Defendant's Motion, Exh. A.) Since he received no response to this request within 30 days, he has exhausted his administrative remedies.

### B. Extraordinary and Compelling Circumstances

If the exhaustion requirement is met, a court may modify or reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued

by the Sentencing Commission." 18 U.S.C. § 3582(a). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Holden*, 452 F. Supp. 3d 964, 966 (D. Or. 2020).

      Mr. Montanez-Rodriguez argues first that extraordinary and compelling reasons exist for his release because he has diabetes and high blood pressure and because he may have coronary artery disease. (Defendant's Motion.) The Centers for Disease Control and Prevention ("CDC") reports that "COVID-19 is a new disease. Currently there are limited data and information about the impact of many underlying medical conditions and whether they increase the risk for severe illness from COVID-19." *See* CDC, Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Dec. 29, 2020). That said, "[b]ased on what we know at this time," it appears that adults with diabetes "are at an increased risk for severe illness from the virus that causes COVID-19." *Id.* Furthermore, although many inmates at Florence FCI, where Mr. Montanez-Rodriguez is being housed, have recovered from the COVID-19 virus, there appears to be a new outbreak at the facility. Currently 31 inmates and 3 staff have tested positive. *See* Bureau of Prisons ("BOP"), Covid-19 Cases, https://www.bop.gov/coronavirus (last visited January 22, 2021). Thus, the Court finds Mr. Montanez-Rodriguez has established extraordinary and compelling reasons for his release.

      Mr. Montanez-Rodriguez additionally argues that extraordinary and compelling reasons exist because his medical conditions are not being adequately addressed while he is in custody. (Defendant's Motion). The Court disagrees. Mr. Montanez-Rodriguez complains that he has not been allowed to see a doctor for darkening toes on his left foot; that he needs to undergo surgeries to both his lower legs, which need has been ignored; and that he has not received his prescribed "Avastin injection" for his left eye. (*Id.*) With respect to his left foot, Defendant's medical records reflect that he has been seeing a doctor regularly to monitor the healing of his amputated right toe and to evaluate the toes on his

other foot. (Government's Response Exhs. E, F.) No clinical notes reflect any additional needed surgeries to his lower legs denied by the BOP. Additionally, with respect to his left eye injection, medical records reflect that he was scheduled to be treated at Colorado Retinal Associates and to possibly receive the "Avastin intraocular injection." (Government's Response, Exh. G.) Therefore, the Court finds that his claim of inadequate medical care is unfounded.

### C. Section 3553(a) Factors

Significantly, this is Mr. Montanez-Rodriguez's second conviction for importing narcotics into the United States. The last time he was caught, he was sentenced to 30 months in custody, which does not appear to have deterred Mr. Montanez-Rodriguez from doing the same thing again. Thus, releasing him with an almost identical sentence does not appear to afford adequate deterrence to keep Mr. Montanez-Rodriguez from continuing to earn his money in this illegal fashion.

Second, Mr. Montanez-Rodriguez clearly has an untreated drug addiction. He has been repeatedly arrested and convicted for possessing methamphetamine and, on at least one occasion, driving while under the influence of methamphetamine. Therefore, the Court has concern about protecting the public from Mr. Montanez-Rodriguez's future crimes.

Finally, releasing Mr. Montanez-Rodriguez with the criminal history he has would result in unwarranted disparities with other similarly-situated defendants. Therefore, the Court finds that the § 3553(a) factors do no support releasing Mr. Montanez-Rodriguez at this point in time.

## III. CONCLUSION

Because the Section 3553(a) factors do not support releasing Mr. Montanez-Rodriguez, his Motions for Compassionate Release are **DENIED**. (ECF No. 36, 44.)

**IT IS SO ORDERED.**

**DATED: January 22, 2021**

Hon. Cynthia Bashant
United States District Judge